## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Case. No.: 1:16-cv-7359 |
| | ) | |
| v. | ) | Judge Rebecca Pallmeyer |
| | ) | |
| JANE DOES 1-3, | ) | Magistrate Judge Michael Mason |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

NOW COMES the Plaintiff JOHN DOE ("Plaintiff"), by and through his attorneys, Mudd Law Offices and, pursuant to Fed. R. Civ. P. 65, respectfully moves this Court for a temporary restraining order against the Defendants JANE DOES 1-3 ("Defendants"), stating as follows:

### INTRODUCTION

The Defendants' conduct could not more clearly be unlawful. Specifically, they registered a domain that consisted of the Plaintiff's name ("Plaintiff Domain") for purposes of extorting money from the Plaintiff. To pressure the Plaintiff, they published false content about him on a website accessible at the Plaintiff Domain ("Plaintiff Website"). The Defendants then informed the Plaintiff that a price – more than 10,000 times the actual, likely cost of the Plaintiff Domain – would remove the Plaintiff Website's content and transfer the Plaintiff Domain to him. This conduct expressly violates two federal and one state statute each of which provide for injunctive relief. In fact, the federal statutes expressly provide for the transfer of the domain at issue to the injured Plaintiff. In this context, the Plaintiff seeks this and other related relief.

1

## FACTUAL BACKGROUND

The Defendants registered the Plaintiff Domain without the Plaintiff's authorization. Compl. ¶¶ 10-15.  On the Plaintiff Website at the Plaintiff Domain, the Defendants operate and host content intended to defame and disparage the Plaintiff, his goodwill, and his reputation.  The Defendants sought to profit from their registration of the Plaintiff Domain by, among other conduct, attempting to extort $99,999.00 from the Plaintiff.  Id. ¶¶ 13-15.  To do so, the Defendants listed the Plaintiff Domain as a premium domain for sale at $99,999.00.  Id.  They then explained to the Plaintiff that they would transfer the Plaintiff Domain to him and remove the content at the Plaintiff Website upon his purchase of the Plaintiff Domain at the premium price.  Id.  The Defendants' conduct caused and continues to cause the Plaintiff harm.  It also violates federal and state statutes and gives rise to other claims.  Thus, the Plaintiff filed his Complaint alleging violations of the Cyberpiracy Protection for Individuals Act ("Cyberpiracy Act"), 15 U.S.C. § 8131, the Anti-Cybersquatting Protection Act ("Anti-Cybersquatting Act"), 15 U.S.C. § 1125(d) ("ACPA"), and Illinois Right to Publicity Act, 765 ILCS § 1075/30, as well as claims for defamation *per se* and false light.  By this motion and pursuant to the injunctive relief available under each of these statutes, the Plaintiff seeks a temporary restraining order ("TRO") until he can obtain a preliminary and/or permanent injunction against the Defendants.

## ARGUMENT

As the Plaintiff can meet the requirements and standard for obtaining a temporary restraining order, this Court must grant this motion and provide the Plaintiff his requested relief.

## I.      Standard for a Temporary Restraining Order

This Circuit's temporary restraining order standard is identical to its preliminary injunction standard.  Long v. Bd. of Educ., 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001).  As such, a

plaintiff seeking a temporary restraining order must show (1) "some likelihood of success on the merits"; (2) "no adequate remedy at law exists"; and, (3) "irreparable harm if the injunction is not granted." Id. (quoting Ty, Inc. v. Jones Group Inc., 237 F.3d 891, 895-896 (7th Cir. Ill. 2001)). Where a plaintiff satisfies these requirements, a court must then balance the harm the plaintiff will suffer absent injunctive relief against the harm the defendant might suffer should the injunctive relief be granted. Id. Finally, the court must also consider the public interest in determining whether to grant the injunctive relief requested. Id. In assessing all of these factors, a court must apply a "sliding scale" analysis such that "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." Ty, Inc., 237 F.3d at 895. "The 'sliding scale' approach is not mathematical in nature, rather, 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" Id. at 896.

## II.     Plaintiff Can Meet the Requirements for Temporary Restraining Order

The Plaintiff can demonstrate a likelihood of success on the merits, an inadequate remedy at law, and irreparable harm. Additionally, the balance of harms as well as public interest considerations weigh in favor of granting the requested injunctive relief.

### A.     Likelihood of Success on the Merits

The Plaintiff can demonstrate a likelihood of success on the merits for violation of the Cyberpiracy Act, 15 U.S.C. § 8131; violation of the Anti-Cybersquatting Act, 15 U.S.C. § 1125(d); and, violation of the Illinois Right to Publicity Act, 765 ILCS 1075/1, et seq.. To demonstrate a likelihood of success on the merits, a plaintiff need only meet a low threshold and "demonstrate a better than negligible chance of succeeding." Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999). In other words, the movant need only show a "fair question" about the

existence of the protected right such that the court should preserve the status quo until the case reaches resolution on the merits. C.D. Peters Constr. Co. v. Tri-City Regional Port Dist., 281 Ill. App. 3d 41, 47 (5th Dist. 1996) (citing Buzz Barton & Associates, Inc. v. Giannone, 108 Ill. 2d 373, 382 (Ill. 1985)). In this context, "[t]he status quo is the last uncontested status which *preceded* the pending controversy." Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963), cert. denied, 375 U.S. 821, 84 S. Ct. 59, 11 L. Ed. 2d 55 (1963). Further, the movant need not make a case entitling them to relief on the merits. Id. Under this standard, as explained more fully below, the Plaintiff possesses and can demonstrated a strong likelihood of success on each of his federal and state statutory claims providing for injunctive relief.

**1.      Plaintiff Likely to Prevail on Cyberpiracy Claim (Count I)**

The Plaintiff possesses a strong likelihood of success on the merits on his claim for violation of the Cyberpiracy Act. The statute states in part:

> Any person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person . . . , shall be liable in a civil action by such person.

15 U.S.C. § 8131(1)(A). Although few courts have addressed violations of § 8131, Randazza v. Cox, 920 F. Supp. 2d 1151, 1157 (D. Nev. 2013), courts that have done so provide some guidance. A defendant violates § 8131 if he possesses a "bad faith intent to profit from registering, trafficking in, or using as a domain name a mark that is either identical or confusingly similar" to a person's name. Id.; 15 U.S.C. § 8131(1)(A). In Bogoni v. Gomez, the court held that the purchase of a domain and attempt to sell the domain for a "price exorbitantly beyond the Domain Names' actual value" sufficiently demonstrates that the defendant "purchased the domains with the specific intent to profit from their registration." Bogoni, 847 F. Supp. 2d 519, 524 (S.D.N.Y. 2012).

4

Here, the Defendants registered the Plaintiff Domain. Compl. ¶ 12. The Plaintiff Domain consists of the Plaintiff's name. Id. ¶ 43. The Defendants registered the Plaintiff Domain without the Plaintiff's consent. Id. ¶ 41. Moreover, they did so without any *bona fide* noncommercial or fair use reason to do so. Compl. ¶¶ 26-27. Rather, the Defendants registered the Plaintiff Domain for the specific intent to profit from it. Id. ¶ 49. Indeed, the Defendants listed the Plaintiff Domain for sale as a "Premium Domain" in the amount of $99,999.00, as opposed to the less then $10.00 price for a common ".com" domain name through GoDaddy, Inc. Id. ¶ 31; https://www.godaddy.com/ (last visited, August 4, 2016) (exhibiting the price for a .com domain). In an effort to persuade the Plaintiff to pay the "exorbitant price," the Defendants created the Plaintiff Website that contained false and defamatory statements about the Plaintiff. Compl. ¶¶ 13-15, 28. The Defendants then suggested to the Plaintiff that, if he paid the Defendants $99,999.00 for the "premium domain," they would shut down the Plaintiff Website and transfer the Plaintiff Domain to his possession. Id. ¶¶ 13-15. Clearly, the Defendants attempted to sell the Plaintiff Domain to the Plaintiff for a "price exorbitantly beyond" the Plaintiff Domain's actual value. See Bogoni v. Gomez, 847 F. Supp. 2d at 524. This alone is "strongly probative of a specific intent to profit." Id. Based on the foregoing, the Defendants registered the Plaintiff Domain with the specific, bad faith "intent to profit from such name by selling the domain name for financial gain" to the Plaintiff. See Randazza v. Cox, 920 F. Supp. 2d at 1157; Bogoni v. Gomez, 847 F. Supp. 2d at 524.

Thus, the Plaintiff can demonstrate the Defendants (a) registered the Plaintiff Domain that consisted of the Plaintiff's name; (b) did so without his consent; (c) lacked any *bona fide* reason to register the Plaintiff Domain; and, (d) registered it with a bad faith intent to profit from such name by attempting to sell it to the Plaintiff for an exorbitant price. See *supra*. As such,

the Plaintiff can satisfy each of the elements necessary to demonstrate violation of the Cyberpiracy Act, 15 U.S.C. § 8131. Id. Indeed, the Defendants clearly violated the Cyberpiracy Act. Id. Therefore, the Plaintiff possesses a likelihood of success on the merits, or a better than negligible chance, in demonstrating a violation of 15 U.S.C. § 8131. See id.

## 2. Plaintiff Likely to Prevail on Cybersquatting Claim (Count II)

The Plaintiff possesses a strong likelihood of success on the merits of his claim for violation of the Anti-Cybersquatting Act. This act protects a trademark holder against unauthorized registration and use of a domain name that infringes such trademark.[1] To prevail on a claim under this section, a plaintiff must demonstrate that: (1) it owns a protected mark or personal name protected as a mark; (2) the defendant registered, trafficked in, or used a domain name that is identical or confusingly similar to the plaintiff's distinctive trademark or personal name; and (3) the defendant registered or used the domain names with a bad faith intent to profit from use of such trademark or personal name. Nike, Inc. v. Circle Group Internet, Inc., 318 F. Supp. 2d 688, 690-91 (N.D. Ill. 2004); see also Coca-Cola, Inc. v. Purdy, 382 F.3d 774, 790 (8th Cir. 2004) (affirming the district court's grant of a preliminary injunction for Plaintiff on their cybersquatting claims); Shields v. Zuccarini, 254 F.3d 476, 486 (3d Cir. 2001) (same).

Here, the Defendants registered, trafficked in, and have used the Plaintiff Domain that is identical to the Plaintiff's personal name. Compl. ¶¶ 13, 16-32. The Defendants did so in bad faith. Compl. ¶ 66. The Defendants have no intellectual property rights in the Plaintiff's name or the Plaintiff Domain. Id. ¶¶ 60-65. The Defendants have not used the Plaintiff Domain for any *bona fide* offering of goods or services. Id. ¶ 64. Rather, the Defendants have published a

---

[1] A trademark need not be registered to be protected by § 1125. Two Pesos. Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) ("[I]t is common ground that section 43(a) [of the Lanham Act codified at 15 U.S.C. section 1125] protects qualifying unregistered trademarks . . . .").

website at the Plaintiff Domain seeking to harm the Plaintiff and tarnish his name, goodwill, and reputation. Id. ¶ 11. Further, the Defendants have sought to profit off of the Plaintiff's name by selling the Plaintiff Domain for an exorbitant price. Compl. ¶ 14. Therefore, the Defendants registered, trafficked in, and have used the Plaintiff Domain in bad faith with an intent to profit from it by using the Plaintiff's name. See Shields v. Zaccarini, 254 F.3d. 476, 485 (bad faith found where defendant had no intellectual property rights in the infringing domains, never used the infringing domains for a *bona fide* offering of goods or services, used the infringing domains to divert consumers away from the plaintiff's web presence, and acted with the intent to profit off of and/or tarnish the plaintiff's mark); see also Tory Burch LLC v. Doe, No. 12 C 7163, 2012 U.S. Dist. LEXIS 142554, at *12 (N.D. Ill. Oct. 2, 2012).

Based on the foregoing, the Plaintiff can demonstrate that (a) the Plaintiff's personal name is protected under the Act; (b) the Defendants registered the Plaintiff Domain that consisted of the Plaintiff's name; and (c) the Defendants did so with the bad faith intent to profit from the Plaintiff's name. See *supra*. As such, the Plaintiff can satisfy each of the requirements to demonstrate a violation of § 1125(d). See Shields v. Zaccarini, 254 F.3d at 485; Nav-Aide Ltd. v. Navi-Aids USA, Inc., 2001 U.S. Dist. LEXIS 17619 at *29. Indeed, the Defendants violated § 1125(d). See id. Thus, the Plaintiff possesses a likelihood of success on the merits, or better than a negligible chance, of demonstrating a violation of 15 U.S.C. § 1125(d). Id.

### 3. Plaintiff Likely to Prevail on Right to Publicity Claim (Count III)

The Plaintiff possesses a strong likelihood of success on the merits of his claim for a violation of the Illinois Right to Publicity Act. Under the Act, "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person." 765 ILCS § 1075/30. The Act

seeks to protect each individual's "right to control and to choose whether and how to use [his] identity for a commercial purpose." 765 ILCS 1075/10; Villalovos v. Sundance Assocs., NO. 01 C 8468, 2003 U.S. Dist. LEXIS 387, at *13 (N.D. Ill. 2003). Identity clearly encompasses an individual's name, id. at *14 (citing 765 ILCS 1075/5), and does not need to have a commercial value. Id. Indeed, the "Act appears to cover all individuals whether or not their identities have been used commercially." Id.

Here, the Defendants use the Plaintiff's name for commercial purposes in violation of the Act. Compl. ¶ 65. Specifically, the Defendants use the Plaintiff's name in the Plaintiff Domain and on the Plaintiff Website without the Plaintiff's consent. Compl. ¶¶ 16-22. Further, the Defendants have listed the Plaintiff Domain for sale in an amount of $99,999.00. Id. ¶ 14. Additionally, the Defendants solicit money from visitors to the Plaintiff Website for purposes of supporting their ongoing effort to harm the Plaintiff. Compl. ¶¶ 29-32. Thus, the Defendants have used the Plaintiff's name in the Plaintiff Domain and Plaintiff Website for commercial purposes. See Brown v. ACMI Pop Div., 375 Ill. App. 3d 276, 284 (2007) (citing 765 ILCS 1075/5 (West 2002) ("'[c]ommercial purpose' means the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services***'").

Based on the foregoing, the Plaintiff can demonstrate that the Defendants have used the Plaintiff's name for commercial purpose without the Plaintiff's consent. See supra. As such, the Plaintiff can satisfy each of the requirements to demonstrate a violation of Illinois Right of Publicity Act. See Villalovos, 2003 U.S. Dist. LEXIS 387, at *13. Therefore, the Defendants possess a likelihood of success on the merits, or better than negligible chance, in demonstrating a

8

violation of the Illinois Right to Publicity Act. See id.

### B.    Inadequacy of Legal Remedy and Irreparable Harm

To obtain a temporary restraining order, the Plaintiff must also demonstrate that he will suffer irreparable harm for which there is no adequate remedy at law if the TRO is not granted. The Plaintiff can do so. To begin with, "[t]here is a 'well-established presumption that injuries arising from Lanham Act violations are irreparable.'" Tory Burch LLC v. Doe, 2012 U.S. Dist. LEXIS 142554, at *12 citing Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 16 (7th Cir. 1992); see also AM Gen. Corp. v. DaimlerChrysler Corp., 311 F.3d 796, 805 (7th Cir. 2002) (confirming "the law's presumption that trademark dilution or infringement threatens irreparable injury for which there is no adequate remedy at law."). This presumption "is based upon the judgment that it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations." Abbott Labs., 971 F.2d at 16. As such, where a likelihood of success on the merits has been demonstrated as to claims under the Lanham Act, a court should presume irreparable harm. See Freedom Calls Found. v. Bukstel, No. 05 CV 5460 (SJ) (VVP), 2006 U.S. Dist. LEXIS 19685, at *71 (E.D.N.Y. Mar. 3, 2006) (irreparable harmed was presumed for Lanham Act cyber-squatting claim because plaintiff had shown a likelihood of success on the merits); see also 1-800 Contacts, Inc. v. WhenU.com, 309 F. Supp. 2d 467, 506 (S.D.N.Y. 2003) rev'd on other grounds, 414 F.3d 400 (2d Cir. 2005) (irreparable harm presumed in cybersquatting action); Advance Magaine Publishers Inc. v. Vogue Int'l, 123 F. Supp. 2d 790, 801 (D.N.J. 2000).

Here, the Plaintiff demonstrates a likelihood of success on two Lanham Act claims, specifically violation of the Cyberpiracy Act (§ 8131) and Anti-Cybersquatting Act (§ 1125(d)). *Supra* §§ II.A.1, II.A.2. Thus, the irreparable harm that befalls the Plaintiff should be presumed,

as it is nearly impossible to determine the economic consequences of the damage to the Plaintiff's reputation and goodwill caused by the Defendants' registration of the Plaintiff Domain and creation of the Plaintiff Website with harmful content thereon. See Freedom Calls Found. v. Bukstel, No. 05 CV 5460 (SJ) (VVP), 2006 U.S. Dist. LEXIS 19685, at *71 (E.D.N.Y. Mar. 3, 2006) (irreparable harmed was presumed for Lanham Act cyber-squatting claim because plaintiff had shown a likelihood of success on the merits); see also 1-800 Contacts, Inc. v. WhenU.com, 309 F. Supp. 2d 467, 506 (S.D.N.Y. 2003) rev'd on other grounds, 414 F.3d 400 (2d Cir. 2005). (irreparable harm presumed in cybersquatting action); Advance Magaine Publishers Inc. v. Vogue Int'l, 123 F. Supp. 2d 790, 801 (D.N.J. 2000) (citing Shields v. Zuccarini, 89 F. Supp. 2d at 641); Randazza v. Cox, 920 F. Supp. 2d at 1157 (harm presumed in a cyberpiracy claim under 15 U.S.C. § 8131); Tory Burch LLC v. Doe, 2012 U.S. Dist. LEXIS 142554, at *12 (citing 7-Eleven, Inc v. Spear, No. 10 C 6697, 2011 U.S. Dist. LEXIS 21298 at *6 (N.D.Ill. 2011) ("willingness to find irreparable harm in trademark cases stems from an understanding that the 'most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods.'"))

Further, the Plaintiff has an inadequate remedy at law. To be considered "inadequate," a legal remedy does not need to be "wholly ineffectual." Rather, it must only be "seriously deficient as a remedy for the harm suffered." Cooper, 196 F.3d at 817. Here, monetary damages would not compensate the Plaintiff for harm to his reputation and goodwill arising from the Defendants' actions. Indeed, it is difficult if not impossible to calculate the damage to the Plaintiff's reputation and goodwill as a result of the Defendants' conduct in registering the Plaintiff Domain and using it to harm the Plaintiff through the publication of false information on the Plaintiff Website. Because it would be extraordinarily difficult to determine the extent of

the lost goodwill in monetary terms, the Plaintiff satisfies the irreparable harm requirement. See Instrumentalist Co. v. Marine Corps League, 509 F. Supp. 323, 333 (N.D. Ill. 1981) ("Difficulty in proving damages that would fully compensate a plaintiff for the loss of its good will usually warrants a finding of lack of adequate remedy at law and the prospect of irreparable harm")

Therefore, as irreparable harm may be presumed and the calculation of monetary damages based on the Plaintiff's lost goodwill and harmed reputation is incalculable, the requested injunctive relief is appropriate. See Randazza v. Cox, 920 F. Supp. 2d at 1157.

## C. Balancing of Hardships and Public Interest Favor Injunctive Relief

Finally, the balance of harms weighs in favor of the Plaintiff and granting injunctive relief. As stated above, this Court should employ a sliding scale approach to weigh the balance of hardships. *Supra*, Sec. I. Under this approach, "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." Girl Scouts of Manitou Council v. Girl Scouts of U.S. of Am., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008) (quoting Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 387 (7th Cir. 1984)).

Here, the Plaintiff has a strong likelihood of prevailing on his claims. *Supra*, Sec. II.B. As such, the need to have the balance of harms weigh in his favor becomes less essential. See Girl Scouts of Manitou Council, 549 F.3d at 1086. Nonetheless, the balance of harms does strongly weigh in his favor. To be certain, if the Defendants are permitted to continue to use Plaintiff Domain and Plaintiff Website, the irreparable harm to the Plaintiff, his goodwill, and his reputation will continue. In contrast, the Defendants can hardly claim any harm or loss. Indeed, the Defendants have little room to argue they have a right to continue engaging in their clearly unlawful conduct or that they will be harmed by the issuance of injunctive relief. Indeed, the Defendants have no rights to the Plaintiff's name. Compl. ¶ 27. Moreover, the Defendants'

registered the Plaintiff Domain and created the Plaintiff Website in part to unlawfully profit from the use of the Plaintiff's name in the Plaintiff Domain and the Plaintiff Website. Compl. ¶¶ 49, 68-72. Additionally, as an effort to increase their profit and persuade the Plaintiff to pay the exorbitant price for the Plaintiff Domain, the Defendants published false information on the Plaintiff Website to harm the Plaintiff. Compl. ¶ 35. As such, the Defendants will suffer little harm. See Tory Burch LLC v. Doe, 2012 U.S. Dist. LEXIS 142554, at *14 (defendants had "proportionately small" chance of showing lawful activity, therefore they would suffer little to no harm by the issuance of a preliminary injunction). At the most, the Defendants would lose the small cost incurred when they wrongfully purchased and registered the Plaintiff Domain. Thus, the balance of hardships weighs in favor of the Plaintiff and granting injunctive relief.

Finally, the granting of injunctive relief in these circumstances would be in the public interest. The public interest is not served by continuing to allow the Defendants to operate a website for the sole purpose of harassing and profiting off the Plaintiff's name. Compl. ¶ 35. A preliminary injunction would salvage the value of the Plaintiff's name, enjoin the Defendants from further attempting to extort the Plaintiff, and return the parties to status quo. See Randazza v. Cox, 920 F. Supp. 2d at 1159. ("[a]n injunction would return the parties to the position that existed before [d]efendants began using [p]laintiffs' personal names in association with their websites, before the extortion and witness intimidation began"). Consequently, the Plaintiff demonstrates the necessity of a TRO. See id.; Girl Scouts of Manitou Council, 549 F.3d at 1086.

**D.  Injunctive Relief Sought Appropriate**

Each of the statutes discussed above correlate to the first three counts in the Plaintiff's Complaint and provide for injunctive relief. Compl.; 15 U.S.C. § 8131(2); 15 U.S.C. § 1125(d); 765 ILCS 1075/50. The Plaintiff has met his burden for obtaining injunctive relief. *Supra*, Sec.

II.  Thus, the Plaintiff is entitled to injunctive relief under each of these counts and their respective statutes.  Id.; 15 U.S.C. § 8131(2); 15 U.S.C. § 1125(d); 765 ILCS 1075/50.

In particular, the Cyberpiracy Act and the Anti-Cybersquatting Act specifically allow for the "forfeiture or cancellation of the domain name or transfer of the domain name" to the plaintiff or owner of the mark.  15 U.S.C. §§ 8131(2), 1125 § (d)(1)(D).  Among other injunctive relief, the Plaintiff seeks the transfer of the Plaintiff Domain to him.  To preserve the status quo and ensure the possibility of eventual effective relief, courts in cases involving domain names regularly grant the relief requested herein including, but not limited to, transfer of domain names. See Randazza v. Cox, 920 F. Supp. 2d at 1160-1161; see also Philip Morris U.S.A., Inc. v. Otamedia Ltd., 331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004).  Accordingly, to preserve the status quo in this matter, the transfer of the Plaintiff Domain to the Plaintiff is applicable and appropriate.  See id.

Finally, Rule 65(B) provides for injunctive relief without notice where facts show the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition.  Given the Internet economy where a party can act anonymously as well as move domain name registrations and host content with foreign entities, it would be easy for the Defendants – whose identity the Plaintiff does not know - to move registrars upon obtaining notice of this litigation and the injunctive relief sought.  So, it is critical that the injunctive relief be provided the Plaintiff prior to notice being given the anonymous Defendants. Many courts have authorized such relief under the Lanham Act.  See Ex. A (selection of cases).

### E.  Conclusion

Based on the foregoing, this Court must grant the Plaintiff's motion for temporary restraining order.

WHEREFORE, PLAINTIFF JOHN DOE respectfully moves this Court to issue a Temporary Restraining Order against DEFENDANTS JANE DOE 1-3 in his favor by ordering:

1.  That the Defendants and their business partners, affiliates, parents, subsidiaries, officers, directors, employees, servants, representatives, agents, and attorneys, and all other persons or entities acting in concert or participation with or on behalf of the Defendants be restrained and enjoined from using any Internet domain name containing all or any portion or variation of the Plaintiff John Doe's name;

2.  That, within twenty-four (24) hours of the date of this Court's Order, the Defendants shall not operate any website at any Internet domain name containing all or any portion of variation of the Plaintiff John Doe's name and shall not use any such domain to redirect Internet traffic to any non-infringing site. Further, the Defendants shall be prohibited from selling or transferring to third parties, or changing the registrar for, any Internet domain name containing all or any portion or variation of the Plaintiff John Doe's name pending a ruling on the Plaintiff's forthcoming Motion for a Preliminary Injunction;

3.  That within two (2) business days of receipt of this Order, the domain name register for the Plaintiff Domain, namely, GoDaddy.com, LLC, shall unlock and change the registrar of record for the Plaintiff Domain to a registrar of Plaintiff's selection until further ordered by this Court, and the domain name registrar shall take any steps necessary to transfer the Plaintiff Domain to a registrar of Plaintiff's selection until further ordered by this Court. The domain name registrar shall not be liable to any Defendant for complying with this Court Order;

14

4.      That those in privity with Defendants and those with notice of the injunction, including any Internet search engines, web hosts, domain name registrars and domain name registries that are provided with notice of the injunction, shall immediately cease facilitating access to any and all websites and accounts through which Defendants engage in conduct enjoined by this injunction;

5.      That, Given the Defendants' clear intent to use the Plaintiff John Doe's name in bad faith, the Defendants are prohibited from using the Plaintiff John Doe's name on the Internet; and,

6.      Such other relief as the Court may deem proper and appropriate.


Dated:      Chicago, Illinois                   Respectfully submitted,
            August 4, 2016                      PLAINTIFF
                                                JOHN DOE


                                    By: /s/ Charles Lee Mudd Jr.
                                        One of Their Attorneys
                                        Charles Lee Mudd Jr.
                                        Mudd Law Offices
                                        3114 West Irving Park Road
                                        Suite 1W
                                        Chicago, Illinois 60618
                                        773.588.5410 Telephone
                                        773.588.5440 Facsimile
                                        Illinois ARDC:
                                        clm@muddlaw.com

15